**Stanton R. Gallegos, OSB #160091**
StantonGallegos@MarkowitzHerbold.com
**Jermaine F. Brown, OSB #073415**
JermaineBrown@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

**L. Timothy Fisher***
ltfisher@bursor.com
**Joshua B. Glatt***
jglatt@bursor.com
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455

**Max S. Roberts***
mroberts@bursor.com
**Caroline C. Donovan***
cdonovan@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408

*Attorneys for Plaintiffs*

*\*Pro Hac Vice Application Forthcoming*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| ERIC BREINDEL, JOSEPH INJAYCHOCK, and RYAN NAGER, individually and on behalf of all others similarly situated, | Case No. 3:25-CV-01852-IM |

Plaintiffs,

v.

ON INC.,

Defendant.

Case No. 3:25-CV-01852-IM

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

**(1) VIOLATION OF NEW YORK GEN. BUS. LAW ("GBL") § 349**

**(2) VIOLATION OF NEW YORK GEN. BUS. LAW § 350**

**(3) VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**73 P.S. § 201,** *et seq.*

**(4) VIOLATION OF MASS GEN. L. CH. 93(A)**

**JURY TRIAL DEMANDED**

Plaintiffs Eric Breindel, Joseph Injaychock, and Ryan Nager ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant On Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel, except as to allegations based on their personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action brought by Plaintiffs who purchased Defendant On Inc.'s ("On Clouds" or "Defendant") athletic shoes made with "CloudTec" technology.

2.      Defendant is a leading manufacturer and seller of wildly popular running shoes. Defendants' shoes have grown in popularity because of their CloudTec design used for the "outsole" of the shoe, which is comprised of hexagonal, octangular, and ovular shaped holes that form the external landing surface of the shoes.

3.      The CloudTec technology is intended to provide cushioned support when wearers land.  But when the consumer steps, whether walking or running in them, the sliding rubber within the CloudTec rubs together, causing a noisy and embarrassing squeak with each and every step.

4.      Though seemingly inconsequential, according to upset consumers publishing their experience, Defendant has refused to cover this defect—which it has been on notice of—under its warranty.  Accordingly, consumers are left with no relief after buying almost $200 shoes they can no longer wear without their doing significant DIY modifications to the shoe.  Indeed, despite being advertised as a shoe—they can't be worn as such.

5.      No reasonable consumer would purchase Defendant's shoes—or pay as much for them as they did—knowing each step creates an audible and noticeable squeak that can only be addressed through DIY physical alterations to the shoe or ceasing to wear the shoes completely.  Accordingly, Plaintiffs bring claims against Defendant on behalf of themselves and all others similarly situated for violations of (1) New York Gen. Bus. Laws ("GBL") §§ 349 and 350; (2) Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPA"); and (3) Mass Gen. L. Ch. 93(A).

## THE PARTIES

6.      Plaintiff Eric Breindel is a citizen of New York and resident of Brewerton, New York.  In June 2025, Plaintiff Breindel purchased a pair of Cloudsurfer from Amazon.com from his home in New York.  Plaintiff's Cloudsurfers are supported by CloudTec technology.  After using his shoes, Plaintiff noticed a squeaking with every step that he has been unable to stop.  Plaintiff cannot walk and run in his Cloudsurfers without experiencing a squeak with each step.  Accordingly, Plaintiff is no longer able to use his shoes as intended due to the embarrassment and annoyance the squeaky noise defect causes.  In purchasing his shoes, Plaintiff relied on

Defendant's representations and omissions, including Defendant's failure to disclose the immense squeaking associated with the shoes. But for Defendant's omissions, Plaintiff would not have paid as much for his shoes as he did, or would not have purchased them at all. Thus, Plaintiff was injured by the price premium he paid for the shoes as a result of Defendant's material representations and omissions.

7.    Plaintiff Joseph Injaychock is a citizen of Pennsylvania and resident of Willow Grove Pennsylvania. Plaintiff Injaychock purchased a pair of Cloudsurfers from Dicks Sports Goods in 2024. Plaintiff purchased a second pair from Defendant's Website in 2024. Defendant's Cloudsurfers are supported by CloudTec technology. Approximately one month after owning his first pair, Plaintiff began noticing a squeaking sound he attributed to weather and flooring. Plaintiff researched how to address the issue and found recommendations to add coconut oil. Attributing the issue to an isolated defect, Plaintiff purchased another pair from Defendant's website. This second pair suffered from the same defect. In purchasing his shoes, Plaintiff Injaychock relied on Defendant's representations and omissions, including Defendant's failure to disclose the immense squeaking associated with the shoes. But for Defendant's omissions, Plaintiff Injaychock would not have paid as much for his shoes as he did, or would not have purchased them at all. Thus, Plaintiff Injaychock was injured by the price premium he paid for the shoes as a result of Defendant's material representations and omissions.

8.    Plaintiff Ryan Nagar is a citizen of Massachusetts and resident of South Easton, Massachusetts. Plaintiff Nagar purchased Defendant's Cloudsurfer from a Marathon Sports in 2023. Defendant's Cloudsurfers are supported by CloudTec technology. Shortly after his purchase, Plaintiff began noticing a squeaking. In purchasing his shoes, Plaintiff relied on Defendant's representations and omissions, including Defendant's failure to disclose the immense

squeaking associated with the shoes. But for Defendant's omissions, Plaintiff would not have paid as much for his shoes as he did, or would not have purchased them at all. Thus, Plaintiff was injured by the price premium he paid for the shoes as a result of Defendant's material representations and omissions.

9.      Defendant On Inc. is a Swiss corporation with its principal place of business in Portland, Oregon. Defendant markets, manufacturers, and sells its athletic shoes with CloudTec technology throughout California, New York, Oregon, and the United States.

<b><u>JURISDICTION AND VENUE</u></b>

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act ("CAFA"), because at least one member of each Class is a citizen of a different state than Defendant, there are more than 100 members of the Classes, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs.

11.      This Court has personal jurisdiction over Defendant because Defendant is headquartered in Oregon.

12.      Venue is proper in this District under 28 U.S.C § 1391 because Defendant resides in this District.

<b><u>FACTUAL ALLEGATIONS</u></b>

**I.      DEFENDANT'S CLOUDTEC TECHNOLOGY IS DEFECTIVE**

13.      On Cloud is a German company that has achieved tremendous success in the United States. In 2024, the company brought in about $2.5 billion. Since its entrance into the United States market in 2019, the company's share of the footwear market has grown nearly eightfold.

14.      On Cloud sells more than 60 varieties of men's and women's shoes. The majority—but not all—are made with CloudTec technology. Indeed, Tim Loh and Lily Meier of

Bloomberg Businessweek credit Defendant's success to "figuring out how to bring to market the net multibillion-dollar sneaker technology to dazzle the public's feet the way it's managed to do with its CloudTec cushioning."

15.    Defendant's CloudTec is its signature design.  The CloudTec outsole most notably features hexagonal, octangular, and ovular shaped holes designed to cushion the user as they step. It is designed to "deliver comfort, [and] support a more efficient run" while it "absorbs impact, reduces strain and adapts to [a consumer's] running style to create a sensation loved by runners around the world."



***Featured: Defendant's CloudMonsters with a CloudTec outsole***

16.    As Defendant explains, the outsole "compresses vertically and horizontally before expanding, maintain[ing] your momentum and propelling you forward."[1]  Because of this design, however, a loud and persistent squeak emanates from the "[f]riction in the CloudTec pods."[2]

17.    As one online theory supposes, this occurs because, with each step, "[t]he foam inside these holes rubs together, causing friction and that annoying squeak."[3]  The sound is amplified by "[m]oisture trapped under the insole."[4]

18.    Regardless of the exact reason why, each shoe Defendant designs, manufactures, and sells with the CloudTec outsole has the same issue: a loud, embarrassing, and difficult to stop squeaking sound that emits with each step.  And because each version of the shoe made with a CloudTec outsole is advertised the same, designed nearly—if not completely—the same, each version of Defendant's shoes are substantially similar.

19.    Defendant's shoes are not cheap either.  The shoes with CloudTec outsoles retail from between $140-$180.  Even the cheaper-priced CloudTec shoes are above the 2023 national average of $132.90 for a pair of running shoes.[5]

20.    At issue are each of Defendant's Products made with CloudTec, including but not limited to:

    (a)    Cloud 5

---

[1]  On Clouds, *CloudTec*, *Run on Clouds*, available at https://www.on.com/en-us/explore/technology/cloudtec?srsltid=AfmBOor6s11xYtvKUR6xT7i2qupaRG_IZ2_fsh2IlkcMnGtgkcyGb21L, at 00:13-00-18.

[2]  Alastair, *How To Stop Your On Cloud Shoes Squeaking*, TRAIL & KALE (Oct. 14, 2024) available at https://www.trailandkale.com/tips/how-to-stop-on-cloud-shoes-squeaking/.

[3]  *Id.*

[4]  *Id.*

[5]  Jens Jakob Anderson, *Running Shoes Statistics*, RUNREPEAT (Sept. 4, 2023), available at https://runrepeat.com/running-shoes-statistics.

      (b)      Cloud 6

      (c)      CloudMonsters

      (d)      Cloudtilts

      (e)      Cloudsurfers

      (f)      Cloudeclipse

      (g)      Cloudleap

      (h)      CloudSky

      (i)      Cloudswift

      (j)      Cloudzone

      (k)      Cloudrunner

21.    Each Product is made with a CloudTech technology sole.  Inclusive of each style of shoe is each version's subsequent edition.[6]  As such, each Product is made with the same defect that causes the squeaking Plaintiffs and Class Members have experienced.

**II.    CONSUMERS HAVE TAKEN IT UPON THEMSELVES TO TRY AND REMEDY DEFENDANT'S DEFECT**

22.    The incessant squeaking has injured Plaintiffs and similarly situated consumers. Indeed, a cursory search on Google produces scores of consumer complaints about this critical defect.  In fact, several Reddit pages are dedicated to addressing this issue.[7]



Why do Oncloud shoes always end up squeaking

Hello all. I'm on my third pair of cloud surfers and again like all the pairs squeak when I walk. I already got an exchange once from On, but they said that was only a one time exchange.

---

[6] For example, the Cloudrunner line is inclusive of the Cloudrunner 2.  Discovery will narrow or broaden the scope of Products at issue in this Complaint.

[7] *See e.g.,* Reddit, *r/ONrunning, Why do OnCloud shoes always end up squeaking*, available at https://www.reddit.com/r/ONrunning/comments/1b7sxkg/why_do_oncloud_shoes_always_end_up_squeaking/.

23.    There is no easy fix.  Consumers have taken it upon themselves to share at-home "DIY" remedies.  Of the less invasive remedies, some websites suggest "[r]ub[ing] [coconut] oil into the holes of the CloudTec midsole, focusing on the heel and midfoot where the squeaking is usually worse."[8]  To address the possible moisture issue, sites suggest sprinkling a light layer of baby powder in the shoe and reinserting the insole.  However, neither of these are proven, permanent, or long-term solutions.

24.    One Reddit commentor, taking a more permanent approach, suggests that fellow consumers "[r]ub (or floss) the sandpaper back and forth to scuff up the inside of each pod.  [He] did it about 10 times for each hole."[9]  This worked, the commentor surmised, because "by roughing up the inside of each shole so that when it rubs together, it's not smooth enough to squeak."[10]



---

[8] Alastair, *supra*.

[9] Reddit, *R/RunningShoesGeeks*, available at https://www.reddit.com/r/RunningShoeGeeks/ comments/18nz5bg/how_to_get_rid_of_on_running_shoe_squeak/.

[10] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED         9
CASE NO. 3:35-CV-01852-IM

25.     But even this method does not solve the problem.  The defect is so pervasive that a consumer must use an extremely coarse file to fix their $180 shoe:



26.     Communities on TikTok[11] have emerged seeking solutions as well.  But instead of answers, posters receive comments affirming their experiences:



_____
[11] TikTok, @dmarge (Oct. 19, 2024), available at https://www.tiktok.com/@dmarge/video/ 7427602488963894533.

27.     The squeaking has caused issues for consumers in their daily lives.   Despite Defendant billing their Products as "all-day, every day"[12] shoes, consumers who spend significant time on their feet—like nurses[13] at work—bear the brunt of this defect:



28.     No reasonable consumer would purchase shoes as highly priced as Defendant's—or paid as much for them as they did—if they needed to make DIY alterations to make the Products wearable, or cease wearing them completely due to the squeaky noise defect.

---

[12]    On Clouds, *The Cloud Collection*, available https://www.on.com/en-us/shop/shoes/cloud?srsltid=AfmBOooNysmn08Antz72uY8DKmRsbZ9US0ZfW5hwxu31xVHvov4mIyr4.

[13]    TikTok, @nurse_lilin, (Feb. 2022) *available* https://www.tiktok.com/@nurse_lilin/video/7474154525255863560.

### III.    DEFENDANT IS AWARE OF THE ISSUE BUT DENIES CONSUMERS HELP

29.    As consumers have noted, Defendant is fully aware of the problem:



30.    Indeed, Defendant's warranty "does not extend to defects due to the wrong fit,

[or] normal wear and tear,"[14, 15] and for that reason, consumers have reported being left in the

lurches as Defendant has categorized the squeaking as normal wear and tear:

---

[14]    OnClouds, *Terms and Conditions*, available at https://www.on.com/en-us/terms-and-conditions?srsltid=AfmBOorTsMYF1hq89l5D9-iYqA_Z4O2bGRjYGVwC2xHFhaZpIvmkYQ dT#11-miscellaneous.

[15] Defendant's warranty on its Great Britian Website features the same limitation as on its U.S. warranty: "The warranty does not extend to defects due to the wrong fit, normal wear and tear, exceeding the product's lifespan or damage caused by improper, incorrect or negligent use or changes to the product."  *See* https://www.on.com/en-gb/terms-and-conditions?srsltid=AfmBOoo16PWmcWNBfSJ2f3jIUauZwCgco4o4ZfRWdIIhcu1ai4wU4xdy# 8-limited-warranty.



**Perminder Kaur**
GB · 1 review
Aug 7, 2025

★☆☆☆☆

**Awful trainers and Warranty- STAY AWAY**

My husband and I both purchased on cloud trainers. Both pairs are VERY squeaky. You can hear us coming, miles off. I have sent multiple emails to their customer service team, AND a video. They advise that it is not the trainers and it must be the way we are walking or wearing them on shiny surfaces (I sent a video showing me walking on an outdoor pavement). Despite me going in store and showing the staff and they agree it was not normal and must be a faulty batch. Completely appalling warranty and customer service. Echoing what a lot of people are saying - wish I had read these reviews before hand. Honestly, NOT WORTH THE PRICE - stay away - Nike, Adidas, Hoka, Asics are better options for your money!

August 7, 2025    Unprompted review

⌃ Useful    ⌁ Share    ⚑

**Reply from On AG**
3 days ago

Hello Perminder,

We're really sorry to hear about the squeaking issues you and your husband have experienced with your On Cloud trainers. We understand the frustration. We saw the case has been internally handled and we are sorry that the outcome was not the one you expected.
Squeaking isn't currently classified as a production defect under our warranty.

However, if more support is needed, feel free to get back to us. We are always there to support.

We thank you for your patience and wish you a nice rest of the day.

Best regards,
Your On team

31.    It is feasible for Defendant to adjust its Products to solve this issue:

**Motor_Historian_5418** · 1y ago

yeah I have also had multiple different On shoes. They look very cool and they are great for running but a few weeks after purchasing they squeak like you are stepping on a mouse. Highly annoying so much that I threw them away and went back to addidas. I dont for the life of me understand why they wont change their materials. My guess is most just walk in them and do not put on any serious miles/kms so it goes unnoticed.

⊖    ⌃ 1 ⌄    ⚲ Award    ⤳ Share    ⋯

**patduffy26** · 1y ago

I strictly walk on mine (cloudsurfers) and they started squeaking after 2 weeks.. too bad i threw out the box they came in or else i wouldve returned them :/

⌃ 1 ⌄    ⚲ Award    ⤳ Share    ⋯

32.    Despite this capability, Defendant has done nothing.  Worse, despite being aware,

Defendant makes it difficult for its consumers to get relief:





33.    These consumers' experiences are not unique:



34.    Indeed, reviews on popular shoe sites like Zappos are full of consumers

attempting to get reimbursed for Defendant's defects with no luck:



Great but only lasted 2 weeks. This brand of shoes has a pervasive design defect where the soles start squeaking on each step. It's super annoying and embarrassing. Numerous other customers have run into this issue, but warranty claims are denied. Look it up. Sure it looks great and is quite comfortable, but totally useless as it barely lasts 2 weeks. Save your money and time, go with a trusted brand.

Sax, Zappos Customer, July 12, 2024

 Helpful?

26 found this review helpful.

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED          14
CASE NO. 3:35-CV-01852-IM

35.    Trustpilot complaints echo those from consumers on Reddit:



**A**    Adam Shellam                                    Mar 9, 2025
GB • 1 review

★ ☆ ☆ ☆ ☆

**Poor Product and Customer Experience**

Very poor product and customer experience from what I considered to
be a premium brand.

Within a month the shoes started squeaking even during dry weather
walking. Every single time the shoes squeak loudly without fail. I
complained to ON customer service and was told that they've never had
complaints before and it wouldn't be covered under warranty. A quick
google search (or even looking at other reviews here) show it's a regular
problem with ON shoes, so they're simply hiding from the issue rather
than addressing it.

I've never had a problem with squeaking across any other brand of
shoes, let alone a close to £200 trainer. I will be going back to
Nike/Adidas very quickly.

36.    By categorizing this defect as "normal wear and tear," thereby exempting this
defect from warranty coverage, Defendant is clearly aware—and indeed expects—that this defect
will arise after some amount of use.  Defendant sells its shoes, which are intended for being worn
while walking, with the knowledge that this defect is likely to arise.

37.    Although Defendant is in the best position to know when it first became aware of
the defect, Plaintiffs make the following allegations pursuant to Fed. R. Civ. P. 9(b):

**WHO:** Defendant On Inc.

**WHAT:**  Defendant's conduct was, and continues to be, fraudulent
because it omitted that its Products contain this material defect that
consumers, had they known before purchasing it, would not have
purchased the Products or would not have paid as much for them as
they did but for these material omissions.  Regardless, Defendant
continued to sell the Product in its defective state, responding by
carving out this defect from its warranty and refusing to make
consumers whole.  Through the numerous attempts by consumers to

return their Product, and the complaints consumers lodged with Defendant in those attempts, Defendant was aware of the defect but took no action to remedy it or alert consumers.

**WHEN:** Defendant made its material omissions the moment it put the Products on the market with its current CloudTec design and allowed consumers to purchase the Product with this material defect without ever warning or disclosing to them the existence of this defect it knew was present.

**WHERE:** Defendant's marketing was uniform and pervasive, carried through material omissions on its labeling, marketing, and advertising online and in store.

**HOW:** Defendant represented that the Products were of a superior CloudTec technology but failed to disclose that the CloudTec contained a material defect that causes an audible squeaking with each step. Defendant sold its Product at a high price premium while failing to disclose that this material defect exists with each sale—despite knowing that this defect upset consumers.

**WHY:** Defendant made the material omissions for the express purpose of selling the Products and retaining the benefits of those transactions. This is evident by Defendant carving out any defects relating to squeaking from its warranty so that Defendant could continue to retain the monetary benefits of each sales of its defective Products.

**INJURY:** Plaintiffs and Members of the Classes paid a premium, or otherwise paid more for the Product with the defect than they would have, absent Defendant's material omissions.

## CLASS ALLEGATIONS

38.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this matter on behalf of themselves and all others similarly situated in the following Classes (collectively the "Classes"):

39.     Plaintiff Breindel seeks to represent a class defined as:

All natural persons in the State of New York who purchased Defendant's Products with CloudTec technology during the class period (the "**New York Class**").

40.     Plaintiff Injaychock seeks to represent a class defined as:

All natural persons it the State of Pennsylvania who purchased Defendant's Products with CloudTec technology during the class period (the "**Pennsylvania Class**").

41.    Plaintiff Nagar seeks to represent a class defined as:

All natural persons in the state of Massachusetts who purchased Defendant's Products with CloudTec technology during the class period (the "**Massachusetts Class**").

42.    Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent have a controlling interest and its current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Defendant's counsel.

43.    **Numerosity.**  Class Members are so numerous that joinder of all Members is impracticable.  Plaintiffs believe that there are thousands of people who purchased the Products and substantially similar versions of the Products who have been injured by Defendant's material omissions.  While the exact number of Members of the Classes is unknown to Plaintiffs at this time, such information can be ascertained through appropriate discovery from records maintained by Defendant and its agents.

44.    **Commonality and Predominance.**  The questions of law and fact common to the Classes, which predominate over any questions that may affect individual class Members include, but are not limited to:

(a)    Whether Defendant's shoes cause a squeaking with each step;

(b)    Whether Defendant was aware of this defect;

(c)    Whether Defendant had a duty to disclose this defect;

(d)    Whether the squeaking is a material defect;

(e)    Whether Defendant's conduct violated the statutes referenced herein;

(f)    Whether Plaintiffs are entitled to damages.

45.    **Typicality.**  The claims of the named Plaintiffs are typical of the claims of the Members of the Classes because the named Plaintiffs, like other Members of the Classes, purchased the shoes relying on the omissions made by Defendant on its website and on its Product's packaging, that they could be worn and used as shoes without this material defect rending them usable due this embarrassing and annoying defect.

46.    **Adequate Representation.**  Plaintiffs have retained, and are represented by, qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this class action.  Neither Plaintiffs, nor Plaintiffs' counsel, have any interest adverse to, or in conflict with, the interests of the absent Members of the Classes.  Plaintiffs are able to fairly and adequately represent the interests of the Classes.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by Members of the Classes and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Classes or additional claims as may be appropriate.

47.    **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Members of the Classes is impracticable.  Even if every Member of the Classes could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some

or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with the consumer protection laws asserted herein.

**CAUSES OF ACTION**

**COUNT I**
**Violation Of New York Gen. Bus. Law § 349**
**(On Behalf Of Plaintiff Breindel And The New York Class)**

48.     Plaintiff Breindel incorporates the foregoing allegations as if fully set forth herein.

49.     Plaintiff Breindel brings this claim individually and on behalf of the New York Class.

50.     Defendant markets the Products' CloudTec benefits while failing to disclose the material defect in the CloudTec design.

51.     GBL § 349 prohibits "[d]ecptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of nay service."

52.     Defendant's actions and corresponding omissions occurred in the conduct of business, trade, or commerce.

53.     As a direct and proximate result of Defendant's violation of § 349, Plaintiff Breindel and Members of the New York Class suffered damages in an amount to be determined at trial.

54.     Defendant's acts and omissions mislead consumers in a material way by continuing to promote the benefits of the CloudTec outsoles while failing to disclose this material defect. Accordingly, a reasonable consumer would be misleading by Defendant's deceptive acts and practices. Plaintiff Breindel and the Members of the New York Class would not have paid as much for the Products as they did, or would not have purchased the Products at all, but for Defendant's

material omissions.

55.    Defendant's improper consumer-oriented conduct is misleading consumers in a material way in that, *inter alia*, it induced Plaintiff Breindel and the New York Class Members to purchase the shoes and to pay the requested price for the Products when they otherwise would not have or would not have been willing to pay as much.

56.    By reason of the foregoing, Plaintiff Breindel and the New York Class Members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to GBL § 349(h).

<u>**COUNT II**</u>
**Violation Of New York Gen. Bus. Law § 350**
**(On Behalf Of Plaintiff Breindel And The New York Class)**

57.    Plaintiff Breindel incorporates the foregoing allegations as if fully set forth herein.

58.    Plaintiff Breindel brings this claim individually and on behalf of the New York Class against Defendant.

59.    The acts and omissions of Defendant, as described above, constitute unlawful, deceptive, and fraudulent business acts and practices.

60.    GBL § 350 provides: "False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful."

61.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

62.    Plaintiff Breindel and the New York Class Members are consumers who purchased Defendant's shoes in New York.

63.    As a seller of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

64.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of § 350 by failing to disclose that the Products contain a material defect.

65.     As manufacturer and seller of the Products, and operator of the customer service helpline, Defendant possessed the knowledge that the Products contain the material defect.

66.     To the extent to which Defendant's advertising has failed to reveal material facts with respect to their Products, as described above, constituted false advertising in violation of GBL § 350.

67.     Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiff Breindel and the members of the New York Class.

68.     As a consequence of Defendant's deceptive marketing scheme, Plaintiff Breindel and the other members of the New York Class suffered an ascertainable loss, insofar as they would not have purchased the Products or would have paid less for them than they did but for Defendant's material omissions.  Thus, Plaintiff Breindel and New York Class Members were injured in the amount of the price premium they paid for the Products as a result of Defendant's omissions.

69.     By reason of the foregoing, Plaintiff Breindel and the New York Class Members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to GBL § 350-e(3).

## COUNT III

**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**
**73 P.S. § 201, *et seq.* ("PUTPA")**
**(On Behalf of Plaintiff and the Pennsylvania Class)**

70.     Plaintiff Injaychock incorporates the foregoing allegations as if fully set forth herein.

71.     Plaintiff Injaychock brings this claim individually and on behalf of the

Pennsylvania Class against Defendant.

72.    The acts and omissions of Defendant, as described above, constitute unlawful, deceptive, and fraudulent business acts and practices.

73.    Defendant is a "Person" as defined under PUTPA because it is a corporation. *See* 73 P.S. § 201-2(2).

74.    In selling its Products, Defendant engaged in "Trade" as that term is defined under the PUTPA because it advertised, offered for sale and distribution tangible property (*i.e.,* its Products) which directly affected the people of the Commonwealth. *See* 73 P.S. § 201-2(3).

75.    By failing to disclose that the Products are sold with this defect—rendering them unwearable—and refusing to make consumers whole by excluding this defect from the warranty, Defendant violated the PUTPA by:

(a)    Representing the goods have characteristics, uses, benefits or quantities that they do not have in violation of 73 P.S. § 201-2(4)(v); and

(b)    Representing that goods are of a particular standard, quality or grade if they are of another in violation of 73 P.S. § 201-2(4)(vii).

76.    By purchasing two pairs of shoes with the CloudTec defect, Plaintiff lost money and property in that he paid for the Products on terms he would not have had he known that the Products were made with a defect that Defendant would not rectify.

77.    Plaintiff relied on Defendant's material omission that the Products can be reliably used for their intended purpose—as shoes—when they are actually made with a defect that renders them unwearable.

78.    Pursuant to 73 P.S. § 201-9.2, Plaintiff seeks (1) to recover up to three times actual damages, actual damages themselves, or one hundred dollars ($100), whichever is greater;

(2) additional relief as the Court deems appropriate; and (3) costs and reasonable attorneys' fees.

**COUNT IV**
**Violation Of Mass. Gen. L. Ch. 93(A)**
**(On Behalf Of Plaintiff Nager And The Massachusetts Class)**

79.     Plaintiff Nager incorporates the foregoing allegations as if fully stated herein.

80.     Plaintiff Nager brings this claim individually and on behalf of the Massachusetts Class Members against Defendant.

81.     Section 2 of Chapter 93 of the Massachusetts Unfair and Deceptive Business Practices Act ("MUDBPA") prevents the use of "unfair or deceptive business acts or practices in the conduct of any trade or commerce." An act is "deceptive" under Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

82.     It is "the intent of the legislature that in construing" whether an act is deceptive under 93A § 2, "the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended." *See* Mass. Gen. Laws Ch. 93A, § 2.

83.     Section 9 provides: "Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper … Any person entitled to bring such an action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly situated persons."

84. Pursuant to the definitions codified in Chapter 93A § 1, Defendant is a "person" and Defendant is engaged in "trade" and "commerce" in Massachusetts, because Defendant resides in Massachusetts and the acts and omissions alleged above and incorporated herein originated from Massachusetts.

85. By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged and continues to engage in unfair or deceptive acts or practices in the conduct of trade or commerce.

86. Defendant's omissions deceived, and have a tendency to deceive, a reasonable consumer and the general public.

87. Defendant's acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions. Specifically, Defendant failed to disclose that the Product was designed with a defect that caused Plaintiff Nager's and Massachusetts Class Members' shoes to squeak with each step. Defendant was on notice of this defect but continued to sell the Products with it. Defendant never informed, warned, or alerted consumers.

88. Plaintiff Nager and the Members of the Massachusetts Class reasonably relied upon, and were deceived by, Defendant's omission.

89. Defendant knowingly sold its Product with the above-described defect without ever offering to, or attempting to, remedy it.

90. Defendant's misconduct caused Plaintiff Nager and Massachusetts Class Members to suffer an injury, adverse consequence, or loss because they would not have paid as much for the Products as they did, if they would have purchased them at all, but for Defendant's omissions.

91.     Plaintiff Laufer and the Members of the Massachusetts Class have been harmed by this injury and loss.

92.     The MUDBPA represents a fundamental public policy of the Commonwealth of Massachusetts.

93.     For each loss, Plaintiff Nager and the Massachusetts Class may recover an award of actual damages or twenty-five dollars, whichever is greater.  Ch. 93A § 9(3).

94.     Because Defendant acted willfully or knowingly, Plaintiff Nager and each Member of the Massachusetts Class may recover up to three but not less than two times this amount. In addition, Plaintiff may recover attorney's fees and costs.

95.     In accordance with Massachusetts General Laws Chapter 93A, § 9(3) on February 15, 2025, prior to the filing of this Complaint, Defendant received from Plaintiff's counsel a presuit notice letter, apprising Defendant of its violation.  The letter was sent via certified mail, return receipt requested.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendant did not make any changes to the Product and did not pull the Product from the marketplace.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of the Classes of all similarly situated they each seek to represent, that the Court enter judgment in favor of Plaintiffs and against Defendant as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives of their respective Classes and naming Plaintiffs' Counsel as Class Counsel;

(b)     For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Classes
       on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in the
       amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable
       monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem
       proper; and

(h)    For an order awarding Plaintiffs and the Classes their
       reasonable attorneys' fees and expenses of suit.

## **JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: December 24, 2025                    Respectfully submitted,

                                            **MARKOWITZ HERBOLD PC**

                                            By: */s/ Jermaine F. Brown*
                                            Stanton R. Gallegos, OSB #160091
                                            StantonGallegos@MarkowitzHerbold.com
                                            Jermaine F. Brown, OSB #073415
                                            JermaineBrown@MarkowitzHerbold.com

                                            L. Timothy Fisher*
                                            ltfisher@bursor.com
                                            Joshua B. Glatt*
                                            jglatt@bursor.com
                                            BURSOR & FISHER, P.A.
                                            1990 North California Blvd., 9th Floor
                                            Walnut Creek, CA 94596
                                            Telephone: (925) 300-4455

                                            Max S. Roberts*
                                            mroberts@bursor.com
                                            Caroline C. Donovan*
                                            cdonovan@bursor.com
                                            BURSOR & FISHER, P.A.
                                            1330 Avenue of the Americas, 32nd Floor
                                            New York, NY 10019
                                            Telephone: (646) 837-7408

                                            *Attorneys for Plaintiffs*

*Pro Hac Vice Application Forthcoming*

2398936.1