IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ERIC BREINDEL**, **JOSEPH INJAYCHOCK**, and **RYAN NAGER**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**ON INC.**,<br><br>Defendant. | Case No. 3:25-cv-01852-IM<br><br>**OPINION AND ORDER GRANTING MOTION TO DISMISS** |

Stanton R. Gallegos & Jermain F. Brown, Markowitz Herbold PC, 1455 SW Broadway, Suite 1900, Portland, OR 97201. L. Timothy Fisher & Joshua B. Glatt, Bursor & Fisher, P.A., 1990 North California Blvd., 9th Floor, Walnut Creek, CA 94596. Max S. Roberts, & Caroline C. Donovan, Bursor & Fisher, P.A., 1330 Avenue of the Americas, 32nd Floor, New York, NY 100019. Attorneys for Plaintiffs.

Caroline Brinster, Dentons Bingham Greenebaum LLP, 212 West Sixth Street, Jasper, IN 47546. Betty Javidzad, Dentons US LLP, 601 South Figueroa Street, Suite 2500, Los Angeles, CA 90017. Norman M. Aspis, Dentons US LLP, 4655 Executive Drive, Suite 700, San Diego, CA 92121. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Before this Court is Defendant On Inc.'s motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or in the alternative, to strike class action allegations. Defendant's Motion to Dismiss ("MTD"), ECF 27. Plaintiffs filed a response in opposition ("Opp'n"), ECF 29, to which Defendant replied ("Reply"), ECF 33. For the following reasons, this Court GRANTS IN PART Defendant's Motion and DISMISSES Plaintiffs' First Amended Complaint ("FAC"), ECF 17, in its entirety, without prejudice, and with leave to amend within twenty-one days.

## BACKGROUND[1]

Defendant On Inc. ("Defendant" or "On") is a manufacturer of athletic shoes. FAC, ECF 17 ¶ 1. Since its entrance into the United States market in 2019, Defendant "has achieved tremendous success in the United States." *Id.* ¶¶ 13–14. In 2024, the company brought in about $2.5 billion. *Id.* ¶ 13. Since 2019, the company's share of the footwear market has grown nearly eightfold. *Id.* Defendant sells more than 60 varieties of men's and women's shoes. *Id.* ¶ 14.

Most of Defendant's shoes are made with "CloudTec" technology designed to cushion the wearer as they step. *Id.* ¶¶ 14, 15. A pair of shoes retail for between $140 and $180. *Id.* ¶ 19. The CloudTec design is used on the outsole of the shoe, which is comprised of hexagonal, octagonal, and ovular shaped holes that form the external landing surface of the shoes. *Id.* ¶¶ 2, 15, 16. Plaintiff alleges that "[b]ecause of this design, however, a loud and persistent squeal emanates from the friction in the CloudTec pods." *Id.* ¶ 16 (citation modified). Whenever the wearer takes a step, the shoe emits "a loud, embarrassing, and difficult to stop squeaking sound." *Id.* ¶ 18. Upset consumers have raised this issue, and some have shared do-it-yourself remedies

---

[1] This Court takes Plaintiffs' well-pleaded allegations, summarized here, as true.

PAGE 2 – OPINION AND ORDER GRANTING MOTION TO DISMISS

online. *Id.* ¶ 22 n. 7, ¶¶ 22–26. "The squeaking has caused issues for consumers in their daily lives," and "consumers who spend significant time on their feet—like nurses at work—bear the brunt of this defect." *Id.* ¶ 27. Consumers have alerted Defendant of the issue, but Defendant excluded this defect from its warranty. *Id.* ¶¶ 29–36, 75. Specifically, Defendant categorized this defect as "normal wear and tear" exempt from its warranty coverage. *Id.* ¶ 36.

Plaintiffs are citizens of New York, Pennsylvania, and Massachusetts who purchased Defendant's Cloudsurfer shoes, which are supported by its CloudTec technology. *Id.* ¶¶ 6–8. Plaintiffs noticed squeaking in their shoes. *Id.* Plaintiffs relied on Defendant's failure to disclose the squeaking and would not have purchased the shoes, at least at the price they did, if they knew about the defect in advance. *Id.* Plaintiffs contend Defendant materially mislead consumers by promoting shoes with CloudTec outsoles but failing to disclose the squeaking issue. Plaintiffs raise claims under (1) New York General Business Laws §§ 349 and 350; (2) Pennsylvania's Unfair Trade Practices and Consumer Protection Law; and (3) Mass Gen. L. Ch. 93(A). *Id.* ¶¶ 48–95. Plaintiffs seek to represent classes of consumers from New York, Pennsylvania, and Massachusetts, respectively. *Id.* ¶¶ 38–41.

## STANDARDS

Most motions to dismiss for "failure to state a claim upon which relief can be granted" are governed by Federal Rule of Civil Procedure 12(b)(6)'s familiar standard. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts must "accept as true all well-pleaded allegations of material fact," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010), "examine the allegations of the complaint as a whole," and "draw all reasonable inferences in favor of" the Plaintiff.

PAGE 3 – OPINION AND ORDER GRANTING MOTION TO DISMISS

*Khachatryan v. Blinken*, 4 F.4th 841, 854 (9th Cir. 2021). Courts need not, however, credit legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

By contrast, where a plaintiff alleges "fraud or mistake," a stricter pleading standard applies. Under such circumstances, Federal Rule of Civil Procedure 9(b) requires a Plaintiff to "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) generally requires a plaintiff to plead the "who, what, when, where, and how of the misconduct charged" with sufficient detail to give the defendant notice and opportunity to defend itself. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citation modified).

## DISCUSSION

Defendant moves under Rule 12(b)(6) to dismiss the FAC in its entirety and with prejudice. MTD, ECF 27 at 10. In the alternative, Defendant moves to strike the class allegations pursuant to Federal Rules of Civil Procedure 12(f) and 23. *Id.* For the reasons set forth below, this Court grants Defendant's motion to dismiss. Because this Court finds that Plaintiffs do not state a claim for relief upon which relief may granted, this Court declines to address Defendant's arguments regarding the class allegations.

Below, this Court first addresses Defendant's judicial notice request and takes judicial notice of the exhibits for a limited purpose. Next, this Court states the applicable standards for Plaintiffs' claims brought based on the laws of New York, Pennsylvania, and Massachusetts. This Court then analyzes Plaintiffs' claims and finds that the First Amended Complaint does not state a claim upon which relief can be granted as to all claims. Finally, this Court addresses Defendant's argument that this action should be dismissed without leave to amend and concludes that leave to amend is appropriate.

PAGE 4 – OPINION AND ORDER GRANTING MOTION TO DISMISS

### A. Judicial Notice Request

In support of Defendant's Motion to Dismiss, Defendant requests that this Court take judicial notice of five webpages. Judicial Notice Request, ECF 27-2; Aspis Decl., Exs. A–E, ECF 27-1. Plaintiff does not address this request in their response. *See generally* Opp'n, ECF 29. Federal Rule of Evidence 201 allows for courts to take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed. R. Ev. 201(b). Federal courts may take judicial notice of the "contents of a website, when they are matters of public record." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152, 1157 (D. Or. 2015) (citation modified).

Defendant requests judicial notice of five webpages from footwear companies. Aspis Decl., Exs. A–E, ECF 27-1. Exhibit A is a page on Nike's website, "5 Solutions to Stop Shoes From Squeaking." *Id.*, Ex. A, ECF 27-1 at 4–15. In their motion, Defendant cites this webpage to support the proposition that "all footwear . . . may produce noise under certain environmental or user-specific conditions" and that "[t]he possibility that rubber-soled shoes may produce noise under certain conditions for certain users is neither hidden nor uniquely within On's possession." MTD, ECF 27 at 11; Reply, ECF 33 at 15; *see* MTD, ECF 27 at 11 (explaining that because "[t]he phenomenon is so common, Nike has [the supplied page] on its website."). Exhibit B is a page on KANE Footwear's website, "How to prevent squeaking and noisy shoes." Aspis Decl., Ex. B, ECF 27-1 at 16–25. Exhibit C is a page on the footwear brand Clarks's website, "How to Prevent Shoes from Squeaking: A Parent's Guide to Quiet, Comfortable School Shoes." Aspis Decl., Ex. C, ECF 27-1 at ¶ 4, 26–34. Exhibit D is a page from the footwear brand Merrell's website, "How to prevent squeaking and noisy shoes." *Id.*, Ex. D, ECF 27-1 at 35–50. In their motion, Defendant cites Exhibits B, C, and D to support the proposition that the issue of shoes squeaking is addressed by many other footwear companies. MTD, ECF 27 at 11. Exhibit E is a page on Defendant's website which shows CloudTec shoes for sale. Aspis Decl., Ex. E, ECF 27-

PAGE 5 – OPINION AND ORDER GRANTING MOTION TO DISMISS

1 at 51–81. In moving to strike the class allegations, Defendant cites Exhibit E to support the proposition that "an overview of On's products show that shoes sold with CloudTec outsoles are highly varied," which "affect[s] whether and how the shoes may or may not squeak." MTD, ECF 27 at 39; *see* Reply, ECF 33 at 31.

To the extent Defendant requests judicial notice of the notion that other footwear companies are aware that shoes squeak under certain conditions, that is a "fact . . . not subject to reasonable dispute." Fed. R. Ev. 201(b). This Court therefore takes judicial notice of Exhibits A, B, C, and D for that purpose. However, to the extent Defendant seeks this Court to take judicial notice of how Nike addresses customer complaints of squeaky shoes, in particular Defendant's argument that "[t]he phenomenon is so common, Nike has [the supplied page] on its website," MTD, ECF 27 at 11, the request is denied. Defendant's request exceeds the bounds of judicial notice. "[C]aution must be used in determining that a fact is beyond controversy under Rule 201(b)," and here, how Nike addresses customer complaints of squeaky shoes is not a clear fact fit for judicial notice at this juncture. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (citation omitted). Because this Court does not address Defendant's motion to strike the class allegations, this Court declines to reach the question of whether it should take judicial notice of Exhibit E.

This Court therefore takes judicial notice of the webpage exhibits and the associated landing pages for the limited purpose described above. *See* Aspis Decl., ECF 27-1, Exs. A–D.

## B.  Governing Law

This action was brought by three individual plaintiffs. Plaintiff Breindel, a New York citizen, seeks to represent a class of New York consumers and brings claims under New York General Business Laws ("GBL" or "New York GBL") Sections 349 and 350. FAC, ECF 17 ¶¶ 48–69. Plaintiff Injaychock, a Pennsylvania citizen, seeks to represent a class of Pennsylvania

PAGE 6 – OPINION AND ORDER GRANTING MOTION TO DISMISS

consumers and brings a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. § 201, *et seq.* FAC, ECF 17 ¶¶ 70–78. Plaintiff Nager, a Massachusetts citizen, seeks to represent a class of Massachusetts consumers and brings a claim under the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. L. Ch. 93(A) ("Chapter 93A" or "Massachusetts Chapter 93A"). FAC, ECF 17 ¶¶ 79–95. This Court begins by discussing the governing law and applicable pleading standards for each claim.

### 1. New York GBL

To assert a prima facie case under GBL Sections 349 or 350, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2016 WL 8650462, at *7 (S.D.N.Y. Feb. 5, 2016) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, N.A., 85 N.Y.2d 20, 25 (1995))); *see also Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 359 (E.D.N.Y. 2022) ("Second Circuit courts merge analysis of [GBL §§ 349 and 350] claims."). In analyzing GBL claims, "[t]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers*, 85 N.Y.2d at 26)). A GBL Section 350 claim has the additional element of false advertising that "(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (citation omitted).

PAGE 7 – OPINION AND ORDER GRANTING MOTION TO DISMISS

In analyzing whether the FAC has stated a claim, this Court will apply Rule 12(b)(6)'s pleading standard. In their response, Plaintiffs cite Second Circuit precedent to argue that Rule 12(b)(6) applies to GBL Sections 349 and 350 claims. Opp'n, ECF 29 at 14 n. 1; *see Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) . . . but need only meet the bare-bones notice-pleading requirements of Rule 8(a)."). Defendant concedes this point in its Reply. *See generally* Reply, ECF 33. Therefore, this Court will not apply Rule 9(b)'s heightened pleading standard.

## 2. Pennsylvania CPL

The CPL is Pennsylvania's main consumer protection law. *Commonwealth v. Chesapeake Energy Corp.*, 247 A.3d 934, 936 (Pa. 2021). In addition to other provisions not relevant here, the CPL contains a catch-all provision that covers, in addition to common-law fraud, "any deceptive conduct that creates a likelihood of confusion or of misunderstanding." *Gregg v. Ameriprise Fin., Inc.*, 664 Pa. 567, 583 (2021); *see Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009). A plaintiff asserting a cause of action under the CPL's catch-all provision for deceptive conduct must allege facts showing (1) "a 'deceptive act,' that is 'conduct that is likely to deceive a consumer acting reasonably under similar circumstances,'" (2) "justifiable reliance," and (3) "that this justifiable reliance caused ascertainable loss." *Seldon*, 647 F. Supp. 2d at 470 (quoting Black's Law Dictionary 455 (8th ed. 2004)).

This Court will also apply Rule 12(b)(6) to Plaintiffs' CPL claim. In moving to dismiss, Defendant argues that the heightened pleading standard of Rule 9(b) should apply to Plaintiffs' CPL claim. MTD, ECF 27 at 22. Plaintiff took the opposite position in their response. Opp'n, ECF 29 at 22 (citing *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 417 (E.D. Pa.

2016)). Defendant abandoned this argument in its Reply. *See generally* Reply, ECF 33. As with the GBL claim, this Court will not apply Rule 9(b)'s heightened pleading standard.

### 3.  Massachusetts Chapter 93A

"To plausibly state a Chapter 93A claim premised on a deceptive act, the plaintiff must allege '(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.'" *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020) (quoting *Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 76 (2009)). A deceptive act is one which "has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Id.* (quoting *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 396 (2004)).

Plaintiff's Chapter 93A claim appears to allege a deception claim more generally, rather than fraud. *See* Opp'n, ECF 29 at 22. Accordingly, for that reason and because Plaintiffs do not state a Chapter 93A claim even under Rule 12(b)(6)'s more lenient framework, this Court will apply the typical Rule 12(b)(6) framework, rather than Rule 9(b)'s heightened requirements, to the Chapter 93A claim.

### C.  Analysis

All of Plaintiffs' claims are based on the squeaking associated with Defendant's shoes with CloudTec outsoles. *See* FAC, ECF 17. Plaintiffs do not allege any safety defect or that the shoes no longer serve their marketed function, but rather, that the shoes emit "a loud and persistent squeak" when the wearer takes "each step." *Id.* ¶¶ 16–17. Plaintiffs pursue an omissions theory of liability rather than a theory based on any affirmative statement that constituted a material misrepresentation. *See* Opp'n, ECF 29 at 11 ("Despite Defendant's verbose motion—the bulk of which is dedicated to arguments about puffery and affirmative

PAGE 9 – OPINION AND ORDER GRANTING MOTION TO DISMISS

misrepresentations not present in Plaintiffs' case—this is a straightforward case of consumer deception."). In other words, Plaintiff does not allege that Defendant lied to consumers, but rather, that Defendant knew about the squeaking issue and omitted the defect from public view. *See id.* at 11, 12–14, 17–18, 22–23. For the reasons explained below, this Court finds the FAC does not state a claim under an omission-based liability theory under any of the three state's laws, and thus, cannot survive Defendant's Motion to Dismiss.

### 1.  New York GBL

Under New York's GBL, "an omission-based claim must plausibly allege that the plaintiff could not 'reasonably have obtained the [omitted] information.'" *Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563, 581 (S.D.N.Y. 2025) (citation modified) (quoting *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 26). And "one example—though not the only example—of how to meet that [requirement] is if the defendant alone possesses the omitted information." *Id.* (citation modified).

Here, the FAC fails to allege that Plaintiffs could not reasonably have learned about the defect, the squeaking during wear. Plaintiffs point to broad marketing statements Defendant made about their unique CloudTec outsole design, such as that "the outsole 'compresses vertically and horizontally before expanding, maintain[ing] your momentum and propelling you forward.'" FAC, ECF 17 ¶ 16. Plaintiffs argue that the CloudTec pods that form the outsole cause "a loud and persistent squeak," *id.*, and that "[b]y virtue of designing the specific technology at issue and manufacturing the [s]hoes, Defendant *alone* possessed the material information regarding the cause, nature, and extent of the defect." Opp'n, ECF 29 at 12 (emphasis added).

However, the factual allegations of the FAC defeat Plaintiffs' argument. According to Plaintiffs, Defendant is a sizable, growing footwear brand. FAC, ECF 17 ¶¶ 13–14. Also as

PAGE 10 – OPINION AND ORDER GRANTING MOTION TO DISMISS

alleged, consumers post about their experience with "[t]he incessant squeaking" online. *Id.* ¶ 22; *see, e.g., id.* ¶ 25 (describing "[t]he defect" as "so pervasive" and including a screenshot of a reddit comment). Plaintiffs' "[F]AC cites 'numerous publicly available . . . sources' regarding the" squeaking issue. *Schuman*, 788 F. Supp. 3d at 582 (quoting *Bates v. Abbott Lab'ys*, No. 24-919-CV, 2025 WL 65668, at *3 n.3 (2d Cir. Jan. 10, 2025)); *see* MTD, ECF 27 at 23–24 (citing FAC, ECF 17 ¶¶ 17, 22, 26, 29–35). The FAC includes screenshots of examples of consumers posting about the squeaking issue online across different platforms. There are "several Reddit pages . . . dedicated to addressing [the squeaking] issue" and "[c]ommunities on TikTok have emerged[.]" FAC, ECF 17 ¶¶ 22, 26. Plaintiffs further allege that consumers share at-home remedies online about the issue. *See id.* ¶¶ 23–25. The FAC depicts how consumers were in fact familiar with the squeaking issue and posted about it in forums across the internet. This "public discussion does tend to undercut and render implausible that Defendant alone knew" of the defect. *Womack v. EVOL Nutrition Assocs., Inc.*, No. 621CV00332BKSTWD, 2022 WL 3371213, at *5 (N.D.N.Y. Aug. 16, 2022) (citation modified). The information about the alleged defect here, that Defendant's shoes squeak, was *not* information in Defendant's possession alone. It was in the possession of anyone who looked up potential issues with Defendant's product online.

Furthermore, Plaintiffs also do not establish that any omission was "misleading in a material way." *Segovia*, 2016 WL 8650462, at *7. At the motion to dismiss stage, this Court may "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Common sense dictates that *all* shoes squeak under certain conditions, *see* MTD, ECF 27 at 11 (citing Aspis Decl., ECF 27-1, Exs. A–D), and that user experience with shoe noise is highly variable. As alleged, the CloudTec outsole is Defendant's "signature design" and "features hexagonal,

PAGE 11 – OPINION AND ORDER GRANTING MOTION TO DISMISS

octangular, and ovular shaped holes" different from any other running shoe. *See* FAC, ECF 17 ¶ 15. A reasonable consumer would expect an individual wearer's satisfaction with the unique-looking outsole design to vary. The GBL "does not require [] sellers to list every specific kind of" complaint a consumer may have with a shoe design. *Schuman*, 788 F. Supp. 3d at 583. And nowhere in the FAC is a "loud and persistent squeak," FAC, ECF 17 ¶ 16, defined or qualified. Defendant's failure to disclose that the shoes may squeak at some point is not material, and therefore not actionable under the GBL.

### 2. Pennsylvania CPL

The Pennsylvania CPL's catch-all provision forbids "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Gregg*, 664 Pa. at 582. In turn, "a vendor's omission can constitute 'deceptive conduct.'" *Halpern v. Ricoh U.S.A., Inc.*, 353 A.3d 1264, 1274 (Pa. 2026). And in this context, "an obligation to disclose" is necessary for a claim based on a deceptive omission. *See id.* at 1279. That duty to speak usually "requires the presence of a fiduciary or other confidential relationship 'as prerequisite to liability for omissions.'" *DeSimone v. U.S. Claims Servs., Inc.*, No. CV 19-6150, 2020 WL 1164794, at *3 (E.D. Pa. Mar. 11, 2020) (quoting *Silverstein v. Percudani*, 2005 WL 1252199, at *8 (M.D. Pa. May 26, 2005) (citation modified)). Risks that are "common, frequent, and expected" cannot give rise to an omissions theory of liability under the CPL. *Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027, 1031–33 (Pa. Super. Ct. 2001); *see also Halpern*, 353 A.3d at 1279 (reaffirming *Romeo's* applicability in the CPL context). However, Pennsylvania courts have held that when a seller transacts "with an ordinary non-business customer," a "seller [with] superior knowledge of a material fact that is unavailable to the consumer" has a duty to speak. *In Re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, No. 14 CIV. 6228 (VSB), 2021 WL 3371938, at *21 n.22

PAGE 12 – OPINION AND ORDER GRANTING MOTION TO DISMISS

(S.D.N.Y. Aug. 3, 2021) (citing *Zwiercan v. Gen. Motors Corp.*, No. 3235 JUNE TERM 1999, 2002 WL 31053838, at *4 (Pa. Com. Pl. Sept. 11, 2002)).

Plaintiffs' claim under the catch-all provision of the CPL, *see* Opp'n, ECF 29 at 19, fails for similar reasons as Plaintiffs' New York GBL claim. Defendant did not have a duty to speak in this context. Plaintiff does not allege a "fiduciary or other confidential relationship" between themselves and Defendant. *Silverstein*, 2005 WL 1252199, at *8. Defendant also did not have "superior knowledge" of the squeaking issue that was unavailable to Plaintiffs. *In Re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 2021 WL 3371938, at *21 n.22. As described above, customer complaints about the noisiness of Defendant's shoes were publicly available. Moreover, it is a "common, frequent, and expected" risk that an athletic shoe with an unconventional rubber sole design may squeak. *Romeo*, 787 A.2d at 1031–33.[2] Plaintiffs' claim under the CPL must also be dismissed.

---

[2] Invoking commentary to § 551 of the Restatement of Torts (Second), Plaintiff argues that this omission is "shocking to the ethical sense of the community" because Defendant sells shoes for nearly $200, likely knows the shoes have a defect, and rejects customer requests for help. Opp'n, ECF 29 at 20. It is uncertain that a duty to disclose can ever arise where, as here, the information in question is widely publicly available. More fundamentally, the alleged conduct is far from actions "so extreme and unfair[] as to amount to a form of swindling." *Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, No. CV 15-1020, 2016 WL 3198122, at *9 (W.D. Pa. June 9, 2016) (citation modified). Plaintiffs have not alleged anything defective with the shoes other than the squeaking noise. That is a different caliber of product defect from the Restatement's example of cattle "infected with tick fever." Opp'n, ECF 29 at 20. If this Court expanded the "shocking to the ethical sense of the community" exception to these circumstances, its decision would necessarily lack a limiting principle and risk eroding the careful limits that the Pennsylvania legislature imposed on CPL liability. *See Halpern*, 353 A.3d at 1278 ("We are of the view that the General Assembly did not intend 'deceptive conduct' to encompass the expansive principle that, if a vendor merely sells a defective product, the vendor was 'deceptive' as a matter of law under the [CPL's] catch-all provision.").

PAGE 13 – OPINION AND ORDER GRANTING MOTION TO DISMISS

### 3.   Massachusetts Chapter 93A[3]

Courts assessing Chapter 93A omission claims have described "an omission [as] the failure to disclose to another a fact that one knows may justifiably induce the other to act or refrain from acting in a business transaction if one is under a duty to the other to exercise reasonable care to disclose the matter in question." *Tomasella*, 962 F.3d at 71–72 (citation modified). The Massachusetts legislature has provided that in interpreting that requirement, "courts 'will be guided' by the FTC's and federal courts' interpretations of the provisions of the FTC Act that also proscribe unfair or deceptive acts or practices." *Id.* at 70 (Mass. Gen. Laws ch. 93A, § 2(b)). That guidance outlines the limited circumstances under which an omission can constitute a deceptive act. "According to the FTC, omissions give rise to liability based on deception in two limited circumstances: (1) 'to tell only half the truth, and to omit the rest' (e.g., "where a seller fails to disclose qualifying information necessary to prevent one of his affirmative statements from creating a misleading impression"); and (2) 'to simply remain silent, if [the seller] does so under circumstances that constitute an implied but false representation" (e.g., where a misleading impression arise[s] from the physical appearance of the product, or

---

[3] Plaintiffs appear to have abandoned an unfairness theory of liability under Chapter 93A. "Chapter 93A is a broad . . . consumer protection statute," under which "[a] plaintiff seeking relief . . . must prove that the defendant engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Tomasella*, 962 F.3d at 70 (quoting *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016)). Under an unfairness theory of liability under Chapter 93A, "an act or practice is unfair if it falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive or unscrupulous; and causes substantial injury to consumers, plus the conduct must generally be of an egregious, non-negligent nature." *Id.* at 70–71 (citation modified). The FAC appears to pursue an unfairness claim under Chapter 93A, *see* FAC ECF 17 ¶ 85, and in moving to dismiss, Defendants argue that Plaintiffs failed to allege unfair conduct under Chapter 93A. MTD, ECF 27 at 28–29. Plaintiffs do not address this in their response, *see generally* Opp'n, ECF 29, and thus concede this theory of liability. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (arguments not pursued in response briefing are waived).

PAGE 14 – OPINION AND ORDER GRANTING MOTION TO DISMISS

from the circumstances of a specific transaction, or ... based on ordinary consumer expectations as to the irreducible minimum performance standards of a particular class of good')." *Id.* at 72 (citation omitted).

Here, Plaintiffs do not allege a half-truth deceptive omissions theory, so in turn, they must allege liability based on a misleading impression. The FTC has instructed that the assessment of whether an actionable misleading impression arises must be guided by "cost-benefit analysis." *Id.* at 73 (citing *In re International Harvester Co.*, 104 F.T.C. 949, 1051–55 (1984)). For example, in *In re International Harvester Co.*, 104 F.T.C. 949, the FTC weighed "whether a farming equipment manufacturer committed a deceptive act by marketing a gasoline-powered tractor without a warning about a potentially dangerous product feature that resulted in a phenomenon called 'fuel geysering' in which hot gasoline is forcibly ejected through a cap on the tractor's gas tank." *Tomasella*, 962 F.3d at 73 (citing *id.* at 1059). The FTC described the nondisclosure "as a 'pure omission,' which it defined as merely staying silent about a subject "in circumstances that do not give any particular meaning to [the] silence." *Id.* Reasoning that "because the statistical probability of fuel geysering was very low, the FTC determined that the risk of hazard did not render the tractor "unfit for normal use.'" *Id.* Under such circumstances, the FTC found a deception claim was inapt given the potential social costs of excessive disclosure. *In re International Harvester Co.*, 104 F.T.C. at 1063. "The number of facts that may be material to consumers . . . is literally infinite." *Id.* at 1059. As "the seller will have no way of knowing in advance which disclosure is important to any particular consumer, [they] will have to make complete disclosures to all," and therefore, the cost-benefit analysis cuts in favor of no duty to disclose. *Id.*

PAGE 15 – OPINION AND ORDER GRANTING MOTION TO DISMISS

Plaintiffs' Chapter 93A claim fails here for similar reasons as Plaintiffs' New York GBL and Pennsylvania CPL claims. Consumers would be unlikely to measurably benefit from additional disclosure about the squeaking issue. Common sense dictates that *all* shoes, especially rubber-soled shoes with an unconventional outsole, squeak under certain conditions. If that is not enough, customer complaints about the CloudTec outsole's squeak are publicly available online, as Plaintiffs plead. *See* FAC, ECF 17 ¶¶ 17, 22, 26, 29–35. For another, because the defect is not safety-related, any potential harm is minimal as well. Because any marginal benefit is so minimal, Plaintiffs' rule lacks any limiting principle. Any potential defect, no matter how small and no matter how well-known to the public, would require disclosure. Such a result would impose require significantly more resources dedicated to mandatory disclosures. Massachusetts law does not require that result.

Plaintiffs point to the expansive nature of the alleged defect, but their argument lacks any limiting principle. Plaintiffs argue that they have plead that "every [CloudTec] Shoe has a design defect that causes them to squeak." Opp'n, ECF 29 at 23. For that reason, the shoes fall below "the irreducible minimum performance standards" for shoes. *Id.* Yet, if a design defect such as a squeaky shoe could give rise to a deception claim, then *any* potential design defect would do so. Given the commonality of a shoe squeaking, a squeaky shoe does not fall below the "irreducible minimum performance standards" for shoes. *In re International Harvester Co.*, 104 F.T.C. at 1059. Second, even if Plaintiffs are correct about the scale and pervasiveness of injury, Plaintiffs still do not justify the utility of further disclosure. Given the common knowledge that shoes squeak and the prevalence of knowledge on social media that these shoes squeak specifically, Plaintiff does not justify why further disclosure has greater benefits than costs.

PAGE 16 – OPINION AND ORDER GRANTING MOTION TO DISMISS

**D. Leave to Amend**

Defendant asks this Court to dismiss this action without leave to amend, arguing that amendment would be futile. MTD, ECF 27 at 40; Reply, ECF 33 at 35. Plaintiffs request leave to amend in the event this Court dismisses the FAC. Opp'n, ECF 29 at 41. The Ninth Circuit has instructed that "[l]eave to amend [should] be freely given when justice so requires, and this policy is to be applied with extreme liberality." *Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) (quoting *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014)). If Plaintiffs believe they can amend to successfully state a claim, then they are granted leave to file a Second Amended Complaint within twenty-one days. Failure to do so will result in dismissal with prejudice.

## CONCLUSION

Defendants' Motion to Dismiss, ECF 27, is GRANTED, and Plaintiff's First Amended Complaint, ECF 17, is DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND within twenty-one days of this Order.

**IT IS SO ORDERED.**

DATED this 13th day of August, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge